UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON BURDETT,<br><br>     Plaintiff,<br><br>  v.<br><br>CHARLIE I. MARTINEZ; CHAD PAGE; BREE DERRICK; MONTE G. HANSEN; STEPHEN J. GRILL; COREY M. SEELEY; JOHN AND JANE DOES 1-5; and JOHN AND JANE DOES 1-6,<br><br>     Defendants. | Case No. 1:25-cv-00512-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

  Plaintiff is a prisoner in the legal custody of the Idaho Department of Correction (IDOC). Plaintiff is currently incarcerated at the Saguaro Correctional Center (SCC) in Arizona, a private prison operated by a company called CoreCivic (formerly known as Corrections Corporation of America). Plaintiff, through counsel, alleges that he has suffered cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. *Compl.*, Dkt. 1, ¶¶ 187–202.

  Under the Prison Litigation Reform Act of 1996, the Court must review upon receipt any complaint filed by a prisoner against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

  Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

1.   **Standards of Law for Screening Prisoner Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2.   **Factual Allegations**

Plaintiff is serving a sentence of life without the possibility of parole (LWOP) for a murder Plaintiff committed when he was eighteen years old. The Complaint's Introduction offers a concise description of Plaintiff's factual allegations:

> After sentencing, Jason was transferred to the Idaho Department of Correction (IDOC) and housed in brutal conditions at the Idaho Maximum Security Institute (IMSI) until late 1999. In

2001, the IDOC assigned Jason to the Idaho Correctional Center (ICC) and housed him at the prison for about fifteen of the eighteen years between 2001 and 2019. Corrections Corporation of America, a for-profit corporation now known as CoreCivic (CoreCivic herein), operated ICC using inmate management practices relying on degradation, humiliation, and subjugation. CoreCivic's practices at ICC traumatized inmates, undermined their rehabilitation and spawned multiple lawsuits. The IDOC took over ICC in 2014, renamed it the Idaho State Correctional Center (ISCC), and temporarily cut ties with CoreCivic.

From his early twenties until his mid-thirties, Jason was repeatedly housed in danger and the continual toxic stress inflicted extreme trauma. Beginning in about 2012, Jason worked toward improving his situation and engaged in multiple prosocial opportunities, including dog training, learning to transcribe Braille, and taking classes. Between 2016 and 2019, Jason participated in college-level debate and creative writing, volunteered in the chapel, facilitated social skills groups, taught crochet, and presented a speech and creative writing at ISCC events.

…

From ages forty-two to forty-five, between 2020 and August 2023, Jason took several additional college courses, mentored youthful offenders, and cared for fellow inmates with dementia and mental disabilities while housed at the Idaho State Correctional Institute (ISCI).

With each success, Jason demonstrated his potential for transformation, gained self-worth and grew closer to earning a chance to seek parole. But without official parole eligibility, Jason never gains priority for programs or housing under the IDOC's Standard Operating Procedures (SOPs). The lack of priority continually flags Jason for placement in for-profit custody and does not require the consideration to his rehabilitation that the SOPs require for a parole-eligible inmate before ordering a transfer.

In August 2023, Defendants applied Jason's low-priority status to abruptly transfer him to a CoreCivic prison in Arizona, the Saguaro Correctional Center (SCC), where Idaho had been housing low-priority inmates since 2020. Like ICC, CoreCivic manages SCC inmates with degradation, deprivation and subjugation in a hostile and moribund environment. Defendants know CoreCivic's methods are diametrically opposed to the evidence-based practices utilized by the IDOC and harmful to inmates' chances of success in the community. And for his first six months at SCC, Defendants

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

> assigned Jason to units where his presence was disruptive in a similar manner to IMSI and ICC.
>
> Before August 2023, Jason's steps backward were linked to his poor choices. By applying his low-priority status to pull him from an upward trajectory, Defendants utterly disempowered Jason and threw him into his traumatic past. Exiled to SCC, Jason experienced flashbacks to traumatic events at IMSI and ICC, despair, nightmares, and panic that escalated for months. Now, in stark contrast to 2016 to 2023, Jason is allowed off the unit for relatively few and remedial opportunities. Otherwise, he is expected to linger timelessly in the vast concrete dayroom where most inmates mindlessly pass the days watching TV and playing cards and dominos.
>
> And unlike most SCC inmates who incrementally gain priority by approaching a parole eligibility date, Jason already served the majority of nearly thirty years as a low-priority inmate housed in for-profit prisons before working his way to a relatively healthy environment. By using the "lifer" status to exchange stability for re-traumatization, Defendants taught Jason that his progress was illusory, he can never receive the rehabilitative benefit of dignity-based housing, and can expect to rot at the bottom of the barrel for another three decades until he dies of old age.
>
> Eviscerating Jason's hope of continued growth and opportunity, after almost three decades in prison and extraordinary accomplishments, is cruel, unusual and fundamentally unfair in violation of the Eighth and Fourteenth Amendments. Jason seeks damages and injunctive relief ordering Defendants to recognize that he is redeemable and restore his hope of earning consideration for parole, including amendments to the rules and practices so he can gain priority for rehabilitative opportunities in the same manner as inmates who also hope to earn consideration for parole after a parole eligibility date.

*Compl.*, Dkt. 1, at 2–5.

Plaintiff asserts that, beginning in August 2023, his low-priority status (resulting from his LWOP sentence) in general has "preclude[d] [him] from gaining priority for rehabilitative opportunities and depriv[ed] him of hope to earn a meaningful life." *Id*. at 42. In particular, Plaintiff's transfer to SCC and the conditions at the prison allegedly deprived Plaintiff of "opportunity and hope." *Id*. Plaintiff also asserts that Defendants—various Idaho prison officials—

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

have acted pursuant to policies, practices, or customs that (1) prevent "inmates serving life sentences from demonstrating rehabilitation potential and from pursuing a realistic hope of gaining consideration for release on parole," and (2) "categorically deny inmates serving life sentences from opportunities offered to inmates" who have a parole eligibility date. *Id*. at 43–44.

Plaintiff asserts his claims under the Eighth Amendment to the United States Constitution. He seeks monetary, injunctive, and declaratory relief. *Id*. at 44–45.

**3.     Discussion**

Plaintiff has not stated a claim upon which relief may be granted. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

    ***A.     Standards of Law Governing Plaintiff's Claims***

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). That is, prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

Conditions of confinement that amount to cruel and unusual punishment violate the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[T]he Constitution does not mandate comfortable prisons, and prisons … which house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer*, 511 U.S. at 832; *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996). "There is no Eighth Amendment violation if each of these basic needs is separately met. If a challenged condition does not deprive inmates of one of the basic Eighth Amendment requirements, it is immune from Eighth Amendment attack." *Hoptowit v. Ray*, 682 F.2d 1237, 1246–47 (9th Cir. 1982), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

In considering whether prison conditions violate the Eighth Amendment, "[t]he circumstances, nature, and duration of a deprivation of these necessities must be considered." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). For example, the "more basic the need the shorter the time it can be withheld." *Id*. (quoting *Hoptowit*, 682 F.2d at 1259). Unless the need is serious, temporary substandard conditions of confinement do not rise to the level of constitutional violations. *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995) ("The plaintiffs here have not shown … that the sanitary limitations imposed upon them were more than temporary.").

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted). Prison conditions violate the Constitution if they (1) involve "the wanton and unnecessary infliction of pain," (2) are "grossly disproportionate to the severity of the crime warranting imprisonment," (3) result "in unquestioned and serious deprivation of basic human needs," or (4) deny an inmate "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). Moreover, even prison officials who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

If an inmate faces a "threat of serious harm or injury" from another inmate, prison officials who act with deliberate indifference to that threat are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Farmer*, 511 U.S. at 833 ("Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.") (internal citation and alterations omitted). Deliberate indifference in the context of a failure-to-protect claim does not require that a prison official knew the plaintiff "was especially

likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843. However, the deliberate indifference standard *does* mean that even an obvious and substantial risk of assault by one inmate against another does not result in liability so long as the defendant official was not subjectively aware of that risk. *Id*. at 844.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### B.     *The Complaint Fails to State a Claim upon Which Relief May Be Granted*

In Claims 1 and 2, Plaintiff asserts that he has been deprived of rehabilitative opportunities and hope. However, the Eighth Amendment does not include a right to rehabilitation in prison. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (no right to a particular security classification or to prison rehabilitative services); *Hoptowit,* 682 F.2d at 1254–55 (no general right to rehabilitation), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. Moreover, the Court has found no authority for the proposition that depriving an inmate of hope violates the Constitution. *See McKune v. Lile*, 536 U.S. 24, 41 (2002) (distinguishing between "the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not") (Fifth Amendment context). Accordingly, Claims 1 and 2 must be dismissed as implausible.

In Claims 3 and 4, Plaintiff cites *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978). *Monell* permits a § 1983 claim against a local governmental entity where the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

complains. However, because Plaintiff does not sue any such entity,[1] *Monell* is inapplicable. Rather, Claims 3 and 4 are more appropriately analyzed simply as Eighth Amendment claims against the individual Defendants.

In Claim 3, Plaintiff asserts that Defendants' actions have deprived him of "a realistic hope of gaining consideration for release on parole." *Compl*. at 43. But there is "no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (due process context). Furthermore, Plaintiff's lack of hope for release is not the result of any conduct on the part of the Defendant prison officials, but, instead, stems entirely from his LWOP sentence. Because Defendants have no option of granting Plaintiff parole—they cannot simply ignore Plaintiff's lawfully-imposed LWOP sentence—Plaintiff's claims regarding hope for release on parole also fail for lack of causation and are subject to dismissal.

Claim 4 asserts that Defendants' actions have denied Plaintiff of "opportunities" that are offered to inmates with a parole eligibility date, such as less restrictive housing and educational programs. *Compl*. at 44. Again, being placed in a higher custody classification and being deprived of participation in rehabilitative or educational opportunities do not violate the Eighth Amendment. *Hernandez*, 833 F.2d at 1318; *Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985) ("General limitation of … educational opportunities is not considered punishment.").

Therefore, Claim 3 and 4 are implausible and must be dismissed.

---

[1] Even if Plaintiff had named the State of Idaho or another state entity as a Defendant, any such claims would be subject to dismissal for two reasons. First, states and state entities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Second, states and state entities are immune from suit in federal court under the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Quern v. Jordan*, 440 U.S. 332, 342–44 (1979) (holding that § 1983 does not waive state sovereign immunity).

**ORDER**

**IT IS ORDERED:**

1. The Complaint (Dkt. 1) is DISMISSED without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A. Plaintiff has 28 days within which to file an amended complaint.

2. If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice.

3. Defendants are not required to respond to any amended complaint unless and until ordered by the Court.

DATED: November 12, 2025

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge